UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |
|---|
| KAISER FOUNDATION HOSPITALS<br>dba Kaiser Foundation Hospital -<br>Anaheim, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>KATHLEEN SEBELIUS, Secretary of the<br>United States Department of Health and<br>Human Services,<br><br>    Defendant. |

Civil Action No. 11-92 (JEB)

## MEMORANDUM OPINION

Plaintiffs are several hospitals, all owned and operated by Kaiser Foundation Hospitals, that receive Medicare payments for the costs associated with training intern and resident physicians. The amount of reimbursement each hospital receives depends in part on the number of "full-time equivalent" residents and interns (FTEs) in its training program during a fiscal year. In 1997, Congress limited the number of FTEs a hospital could claim in future years to the FTEs counted in its latest pre-1997 cost report. Plaintiffs and the fiscal intermediary that administers Medicare reimbursements agree that the FTE counts in Plaintiffs' 1996 reports undercount the interns and residents who participated in their teaching programs that fiscal year. Such an error in those base-year figures results in inaccurate FTE caps and, hence, lost reimbursement every subsequent year for Plaintiffs. In light of this, they sought to correct these incorrect FTE caps. The intermediary, and later the Administrator of the Centers for Medicare and Medicaid Services (CMS), denied their requests on the ground that the reports that had established the caps had

been finalized for more than three years and thus were no longer subject to "reopening" according to an agency limitation period.

Plaintiffs filed this suit challenging the Administrator's decision and have now moved for summary judgment. While they acknowledge that the reports establishing the FTE caps are "closed," they are not seeking reimbursement for such closed years. As they desire only to correct an erroneous factual predicate that affects subsequent "open" years, they argue this does not constitute an improper reopening. The Secretary disagrees and has filed a Cross-Motion for Summary Judgment. Because the Administrator's interpretation of the reopening regulation is inconsistent with the regulatory text, applicable case law, and the Secretary's own prior interpretations, the Court believes Plaintiffs have the better of this argument.

**I.  Background**

A. The Medicare Statutory and Regulatory Framework

The Medicare program, established under Title XVIII of the Social Security Act and administered through CMS, provides federally funded health insurance to eligible aged or disabled persons. See generally 42 U.S.C. § 1395 *et seq*. Under the program, the Department of Health and Human Services "reimburses medical providers for services they supply to eligible patients." Northeast Hosp. Corp. v. Sebelius, 657 F.3d 1, 2 (D.C. Cir. 2011); see generally 42 U.S.C. § 1395 *et seq*. In order to be reimbursed, hospitals must submit an annual cost report detailing the expenses they incurred during the past fiscal year. See 42 C.F.R. §§ 413.20, 413.24. The Secretary has contracted with fiscal intermediaries to audit cost reports, determine how much Medicare owes each provider, and issue interim payments. See 42 U.S.C. § 1395h; 42 C.F.R. § 405.1803.

Among other things, Medicare reimburses approved teaching hospitals for the direct costs of graduate medical education (GME) – *e.g.*, salaries and benefits for residents and interns. See 42 C.F.R. § 413.75. The amount of GME reimbursement is based in part on the number of FTEs in the hospital's training program. See 42 U.S.C. § 1395ww(d)(5)(B)(ii); 42 C.F.R. § 413.79(d). In 1997, Congress imposed a cap on the number of FTEs a hospital may include for purposes of calculating future GME payment, which is known as the "GME FTE cap." See 42 U.S.C. 1395ww(h)(4)(F); 42 C.F.R. § 413.79(c)(2)(i). Specifically, for cost-report periods beginning on or after October 1, 1997, the hospital's unweighted FTE count – meaning the actual number of FTEs before applying statutorily specified weighting factors – "may not exceed the number … of such full-time equivalent residents for the hospital's most recent cost reporting period ending on or before December 31, 1996." 42 U.S.C. 1395ww(h)(4)(F). In other words, the FTE count a hospital included in its latest pre-1997 report would determine its cap (and thereby affect its reimbursement) for the indefinite future.

Hospitals' pre-1997 reports included only a weighted FTE count. See 62 Fed. Reg. 46,004(V)(I)(2)(a). Because the FTE cap is calculated based on the unweighted count, and additional data needed to be collected to calculate that figure, the caps were not established until the providers' first cost report for the period beginning on or after October 1, 1997 – which for Plaintiffs' was filed in 1998. Id. at 46,004, 46,005; see also 42 C.F.R. § 413.79. "FTE count," therefore, refers to the weighted figure provided in the hospitals' pre-1997 cost reports, and "FTE cap" refers to the cap established thereafter based on the unweighted FTE count.

Once the GME FTE cap is established, the intermediary takes it into account when reviewing a hospital's cost reports. See 42 C.F.R. § 413.79. After such review, the intermediary issues a "notice of program reimbursement" (NPR) indicating how much Medicare owes the

3

hospital for the fiscal year covered by the report. See 42 C.F.R. § 405.1803. The hospital has 180 days from receipt of the NPR to request a review by the Provider Reimbursement Review Board (PRRB). See 42 U.S.C. § 1395oo(a). If the hospital does not timely appeal the NPR, the cost report is considered final. See 42 C.F.R. § 405.1807(c).

The reimbursement determination may nevertheless be reopened – upon a provider's request or at the intermediary's own initiative – within three years of the date of the NPR. See 42 C.F.R. 405.1885(a)-(b) (2001); see also Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 451 (1999); HCA Health Servs. of Okla. v. Shalala, 27 F.3d 614, 615 (D.C. Cir. 1994). Once three years has passed, the intermediary's determination is deemed "closed" and can no longer be reopened. See 42 C.F.R. § 405.1885(b); see also Regions Hospital v. Shalala, 522 U.S. 448, 455 (1998); HealthEast Bethesda Lutheran Hosp. and Rehabilitation Center v. Shalala, 164 F.3d 415, 417 (8th Cir. 1998). The three-year time limit is intended to balance the interests in finality of "intermediary determinations and the resulting amount of program payment" with the need to allow reasonable time for corrections. See Medicare Provider Reimbursement Manual, Part I, Pub. 15-1, § 2930, available at http://www.cms.gov/Manuals/PBM/list.asp (last visited December 9, 2011).

B. Factual and Procedural History

Plaintiffs each operate a hospital complex consisting of a hospital and an affiliated physician clinic. See A.R., Vol. 1 at 104. In 1996, CMS (then known as the Administrator of the Health Care Financing Administration) and the PRRB determined that the residents rotating through the affiliated clinics of other Kaiser-owned hospitals would count toward their intern and resident FTE counts for a separate Medicare reimbursement called "indirect medical education" (IME). See Kaiser Found. Group-IME Costs v. Aetna Life Ins. Co., HCFA Adm'r Dec. (Oct. 21, 1996), reprinted in [1996-2 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 44,980 (AR,

4

Vol. 1, at 195-97); Kaiser Found. Group-IME Costs v. Aetna Life Ins. Co., PRRB Hr'g Dec. No. 96-D50 (Aug. 14, 1996), reprinted in [1996-2 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 44,559 (AR, Vol. 1 at 199-204). Those hospitals' respective IME caps were increased accordingly at that time to include these residents. See A.R., Vol. 1 at 104.

Although IME is subject to the same FTE cap as GME, see 42 U.S.C. §§ 1395ww; see also Swedish American Hosp. v. Sebelius, 773 F. Supp. 2d 1, 3 (D.D.C. March 29, 2011), Plaintiffs' GME caps were not increased to reflect the affiliated clinics' 1996 residents and interns. See A.R., Vol. 1 at 104. Because of this, Plaintiffs contend – and the intermediary agrees – that their GME FTE caps are too low. See Joint Stipulation, A.R., Vol. 1 at 277-79 (January 29, 2009). Plaintiffs, however, did not appeal the FTE counts from their 1996 reports or the GME FTE cap established by their 1998 reports within the respective three-year limitations periods. Instead, the Hospitals finally sought to increase their GME FTE cap through a timely filed appeal of their 1999-2003 cost-reporting years. See A.R., Vol. 1 at 61-70. By raising their FTE cap, they could obtain greater reimbursement in subsequent years since rates are still pegged to the figure reported in 1998. Plaintiffs are not, it should be emphasized, seeking to revisit their actual reimbursement in closed years.

The intermediary denied Plaintiffs' appeal, finding it could not increase their GME FTE caps because the cost reports establishing the caps were no longer subject to reopening. See A.R., Vol. 1 at 107-111. The intermediary took the position that Plaintiffs' 1998 cost reports were the reports at issue because the GME FTE caps first appeared there (based on FTE counts in the 1996 reports). See A.R., Vol. 1 at 107. Because those reports were all closed, the intermediary concluded that it could not adjust Plaintiffs' GME FTE caps without violating the three-year limit on reopening. See A.R., Vol. 1 at 278.

5

When Plaintiffs appealed to the PRRB, it found the intermediary's decision to be in error. See PRRB Dec. No. 2011-D1 (A.R., Vol. 1 at 61-69). Since Plaintiffs' and the intermediary had stipulated that the GME FTE caps were understated, the only issue before the PRRB was whether correcting the cap would entail reopening a cost report after more than three years had passed. Id. at 66. It held that adjusting Plaintiffs' caps to correctly count all FTEs would not constitute a reopening because "such an adjustment would have no effect on [Plaintiffs'] reimbursement for FYE 12/31/1996 or FYE 12/31/1998 (or any closed year)." Id. at 67. Relying on decisions of United States Courts of Appeals, the PRRB concluded that "the correction of predicate factual issues in a closed year does not constitute a reopening when the corrections are made for the purposes of determining a provider's reimbursement in a later open year." Id. at 68.

On December 3, 2010, the CMS Administrator, at her own initiative, reversed the PRRB's decision. See A.R., Vol. 1 at 57 & 1-16; see also 42 U.S.C. § 1395oo(f)(1). She found that since the GME FTE caps were tied to closed cost reports, increasing the caps would violate the reopening limitation. See A.R., Vol. 1 at 15. The Administrator's reversal constitutes the final decision of the Secretary. See 42 U.S.C. § 1395oo.

Plaintiffs filed their Complaint on January 14, 2011, seeking judicial review of the Secretary's decision. The parties have now filed Cross-Motions for Summary Judgment, which the Court considers here.

## II.  Standard of Review

Although styled Motions for Summary Judgment, the pleadings in this case more accurately seek the Court's review of an administrative decision. The standard set forth in Rule 56(c), therefore, does not apply because of the limited role of a court in reviewing the

administrative record. See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (citing National Wilderness Inst. v. United States Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903 F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds, 967 F. Supp. 6 (D.D.C. 1997)). "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id. (internal citations omitted). Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review. See Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

Judicial review of the Secretary's decision in this case is governed by the Medicare statute, 42 U.S.C. § 1395oo(f)(1), which incorporates the Administrative Procedure Act, 5 U.S.C. § 706. The Court, accordingly, must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this "narrow" standard of review, "a court is not to substitute its judgment for that of the agency." Motor Vehicle Manufacturers Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Rather, the Court "will defer to the [agency's] interpretation of what [a statute] requires so long as it is 'rational and supported by the record.'" Oceana, Inc. v. Locke, 2011 WL 2802989, at *2 (D.C. Cir. July 19, 2011) (quoting C & W Fishing Co. v. Fox, 931 F.2d 1556, 1562 (D.C. Cir. 1994)).

An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action." Id. at 30. For that reason, courts "'do not defer to the agency's conclusory or unsupported suppositions,'" United Techs. Corp. v. U.S. Dept. of Defense, 601

F.3d 557, 562 (D.C. Cir. 2010) (quoting McDonnell Douglas Corp. v. U.S. Dept. of the Air Force, 375 F.3d 1182, 1187 (D.C. Cir. 2004)), and "counsel's 'post hoc rationalizations' cannot substitute for an agency's failure to articulate a valid rationale in the first instance. El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dept. of Health & Human Servs., 396 F.3d 1265, 1276 (D.C. Cir. 2005); see Burlington Truck Lines v. United States, 371 U.S. 156, 169, 83 S. Ct. 239, 9 L.Ed.2d 207 (1962)." Zarmach Oil Services, Inc. v. U.S. Dept. of the Treasury, 750 F. Supp. 2d 150, 155 (D.D.C. 2010). The reviewing court thus "may not supply a reasoned basis for the agency's action that the agency itself has not given." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285-86 (1974) (internal citation omitted). Nevertheless, a decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned." Id. at 286.

An agency's interpretation of its own regulation is entitled to "'substantial deference.'" St. Luke's Hosp. v. Sebelius, 611 F.3d 900, 904 (D.C. Cir. 2010) (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994)). Under this standard, the agency's construction controls unless it is "plainly erroneous or inconsistent with the regulation." Id. (quoting Thomas Jefferson Univ., 512 U.S. at 512). In other words, a court may find an agency interpretation unlawful if "an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" Thomas Jefferson Univ., 512 U.S. at 512 (quoting Gardebring v. Jenkins, 485 U.S. 415, 430 (1998)).

The court will not, however, defer to an agency's "*post hoc* rationalizations," which may be evidenced by prior conflicting interpretations of the regulation. See Akzo Nobel Salt, Inc. v. Federal Mine Safety and Health Review Com'n, 212 F.3d 1301, 1304-05 (D.C. Cir. 2000); see also United States Air Tour Ass'n v. Fed'l Aviation Admin., 298 F.3d 997, 1016 n. 15 (D.C. Cir.

2002). Likewise, if an agency's interpretation of a regulation shifts such that the agency is treating like situations differently without sufficient reason, the court may reject the agency's interpretation as arbitrary. See County of Los Angeles v. Shalala, 192 F.3d 1005, 1022 (D.C. Cir. 1999).

**III.    Analysis**

This case boils down to one basic question: does adjusting Plaintiffs' GME FTE caps constitute a "reopening" of their previous cost reports in violation of the three-year limitations period? The Secretary contends that it does. She interprets the statute that limits the number of FTEs as tying the cap to particular cost reports – in this case, Plaintiffs' 1996 reports for the FTE count and their 1998 reports for the FTE cap. She further maintains that adjusting the FTE cap requires reopening those reports; as more than three years have passed since the NPR was issued, reopening is impermissible. Plaintiffs respond that the statute does not tie the GME FTE cap to any particular cost report. Even if it did, they contend that the Secretary's interpretation of the reopening regulation is inconsistent with its language and relevant case law, as well as the Secretary's own prior stance on the regulation; as such, it should be rejected as arbitrary and capricious.

The Court need not address the threshold issue of whether the cap is tied to any cost report. Assuming for purposes of this Motion that it is, Plaintiffs nonetheless prevail because they demonstrate the unreasonableness of the Secretary's view that adjusting the GME FTE cap in a closed cost-report year necessitates reopening the report. As a result, the limitations period does not bar what they seek to accomplish.

A.  Reopening

Plaintiffs first maintain that the Secretary's position that adjusting the GME FTE cap would constitute an untimely reopening is contrary to the language of the reopening regulation. Pl. Mot. at 17. The regulation states in relevant part:

> A Secretary determination, an intermediary determination, or a decision by a reviewing entity … may be reopened, for findings on matters at issue in a determination or decision, by CMS (with respect to Secretary determinations), by the intermediary (with respect to intermediary determinations) or by the reviewing entity that made the decision ….

42 C.F.R. §§ 405.1885(a)(1). It thus applies to "intermediary determination[s]," which are defined as "determination[s] of the amount of total reimbursement" or "of the total amount of payment" due to the provider for a given cost-reporting period. See 42 C.F.R. §§ 405.1885(a), 405.1801(a). The only intermediary decisions subject to the terms of the reopening regulation, according to its plain language, therefore, are determinations of the total amount owed. Since Plaintiffs are not seeking modification of the reimbursement amount for any closed cost-report year, they submit that adjusting GME FTE caps does not amount to a reopening, and the three-year restriction should not apply. See Pl. Mot. at 2, 16-17, 21. This position finds considerable support.

In the most significant case, the Eighth Circuit considered the applicability of the reopening regulation to an analogous matter and concluded, at the Secretary's urging, that the three-year limit on reopening does not apply to "reconsideration of predicate factual issues … with no intention of changing the total reimbursement amount applicable to a year." HealthEast Bethesda Lutheran Hospital and Rehabilitation Center v. Shalala, 164 F.3d 415, 417-18 (8th Cir. 1998). HealthEast involved a Medicare provision that allows hospitals to be reimbursed "for interest payments on 'necessary' loans to the extent that such payments exceed income on the

hospitals' investments." Id. at 416 (citing 42 C.F.R. §413.153(a)(1)). The issue in that case was whether the intermediary could reassess the necessity of loans obtained during closed cost-reporting years for purposes of determining the amount of reimbursement in an open-report year. See id. at 416-17.

The court in HealthEast looked to the language of the reopening regulation to determine whether the Secretary's position was "plainly erroneous or inconsistent with the regulation." Id. at 417 (citing Bowles v. Seminole Rock and Sand Co., 325 U.S. 410, 414 (1945)). Like the Plaintiffs in this case, the Secretary argued that an intermediary determination is only reopened when the total amount of reimbursement for a closed cost-reporting period is disturbed. See HealthEast, 164 F.3d at 417. The court agreed.

It found that, according to the text of the regulation, the three-year limit applies to an intermediary determination "'with respect to findings on matters at issue in such determination.'" Id. at 417 (citing 42 C.F.R. § 405.1885(a)). HealthEast argued that "the phrase 'findings on matters at issue' includes all questions involved in the determination," including "predicate facts germane to the calculation of the appropriate amount of total reimbursement." Id. The court rejected this view, stating that "it would make no sense" to read the regulation to mean that an intermediary determination could not be reopened with respect to predicate factual questions that do not alter the total reimbursement. Id. at 418. Instead, the court concluded that the regulation's text "specifies … that the three-year limitation on reopening applies solely to the amount of total reimbursement." Id. at 417. Because reconsideration of predicate facts that will not affect reimbursement in a closed year "does not fall within the definition of an 'intermediary determination,' … [it] is not subject to the three-year limitation." Id. at 417-18. This

11

interpretation, the court stated, "is the only interpretation logically consistent with the regulatory language." Id. at 418.

The Secretary attempts to distinguish HealthEast by arguing that the intermediary there "'did not seek to alter its final determinations'" for closed cost-reporting periods, whereas here the FTE numbers reported for 1996 or 1998 "would need to be changed, which would require the alteration of the intermediary's final determination of the total amount of program reimbursement for that period." Def. Mot. & Opp. at 24-25 (quoting HealthEast, 164 F.3d at 418). This argument is unavailing. It is undisputed that Plaintiffs in this case are not seeking revision of the total reimbursement due to them from their 1996 and 1998 cost reports, see Def. Mot. & Opp. at 2, 20, 23; Pl. Mot. at 2, Pl. Opp. & Reply at 14, 16-17, and the Secretary's conclusory assertions that changing the GME FTE cap would require adjustments to those total reimbursement amounts cannot change that. See Def. Mot. & Opp. at 22-23, 25, 28; Pl. Opp. & Reply at 14-16. The Secretary offers no legal support for her claim that the caps cannot be increased without modifying the total reimbursement for closed years, particularly where Plaintiffs have disclaimed such sums.

Although this Court is not bound by an Eighth Circuit decision, its reasoning appears sound – indeed, the Secretary himself supported it. Nor is there any meaningful difference between the facts there and here. In HealthEast, the necessity of loans, like the GME FTE caps here, was a key factor in determining the amount of reimbursement a Medicare provider would receive going forward. 164 F.3d at 416. In both cases, determinations initially made in earlier, closed reports affected levels of reimbursement in later, open years. Just as in HealthEast, where the hospitals do not seek adjusted reimbursement for closed years, changing predicate facts does not constitute a reopening.

The Supreme Court has also reached the same conclusion in a similar matter. Regions Hospital v. Shalala, 522 U.S. 448 (1998), involved per-resident GME costs – another factor used to calculate total Medicare reimbursement for GME. Just as for the FTE count, Congress designated a baseline year for per-resident cost determinations that would be "used to calculate GME reimbursements for all subsequent years." Id. at 453. To "ensure that future payments would be based on an 'accurate' determination of providers' [base-year] … costs," the Secretary passed a regulation giving intermediaries authority to verify hospitals' costs during the base period. Id. at 454. The regulation aimed to "prevent future overpayment," but the Secretary made clear that it could not be used to recover "excess reimbursement" for years in which the three-year window for reopening had passed. Id. at 454-55 (emphasis in original). In an audit of the base-year costs for Regions Hospital, an intermediary determined that the average cost per resident was actually several thousand dollars lower than the figure previously approved. Id. at 454-55. The Secretary sought to use the reduced (and more accurate) base-year amount "to determine reimbursements for future years and past years within the three-year reopening window[, but] not … to recoup excessive reimbursement paid [for the base-year], for the three-year window had already closed on that year." Id. at 455. The Supreme Court concluded that this did not violate the reopening regulation because "[t]he Secretary did not enlarge the time the agency had to seek repayment of excess reimbursements in years closed under the three-year prescription; rather, the Secretary extended only the time for determining the proper amount of reimbursement due in subsequent years." Id. at 462. This shows, contrary to the Secretary's present assertion, that foundational elements of GME payment calculation can be altered for open years without affecting total reimbursement in – and thereby reopening – closed cost-report years.

The Court agrees with the Secretary that Regions is not directly controlling here because it involved a regulation that authorized the Secretary to reconsider the base-year calculation even after the cost report for that year was finalized and no longer subject to reopening. See Def. Mot. & Opp. at 26-27. Here there is no such regulation, and the Court's review is of the Secretary's actions in relation to a normal NPR review. This distinction, however, does not dictate a different result because a central question in Regions was still whether reauditing base-year figures outside the three-year window for purposes of calculating reimbursement in open years violated time limits on reopening. See Regions, 522 U.S. at 462-63. The Court concluded it did not. Id. The outcome here should be no different.

The PRRB's decision in this case, furthermore, is consistent with its ruling in an analogous case, which the Secretary did not reverse. Edgemont Hospital v. Mutual of Omaha Insurance Co., PRRB Dec. No. 95-D34, Medicare & Medicaid Guide (CCH) ¶ 43,264 (Apr. 6, 1995) (A.R., Vol. 1, 237-42), like this action, involved a ceiling on reimbursement based on figures in a designated year. Id. at 237. The issue was whether the intermediary could adjust the base-year calculations and "index[] correct cost information through" closed report years for purposes of correcting the reimbursement limit in later years. Id. at 241. The provider in that case argued that changing the base-year rate and carrying it through closed cost reports constituted a reopening and was therefore impermissible. Id. at 238-39. Rejecting that argument, the PRRB upheld the intermediary's adjustments. Id. at 241. The Board reasoned that "because the base-year rate serves as a foundation for future years, it must be as correct as possible." Id. It further noted that "[t]here is no statutory or regulatory support for the concept that adjusting the [reimbursement limit] in subsequent years, to conform with a correct base-year determination, amounts to a reopening." Id. This decision clearly supports Plaintiffs' position

that the base-year GME FTE cap can be corrected in closed reports without reopening them and, indeed, suggests that an erroneous base-year calculation must be modified to ensure appropriate levels of reimbursement in later years.

The Secretary again attempts, unsuccessfully, to distinguish this case on the ground that both the relevant statute and a regulation promulgated by the Secretary authorized the changes made to the base-year rate. See Def. Mot. & Opp. at 27-28; Pl. Opp. & Reply at 21-22. While this is true, the Board did not rely on the fact that changes were made pursuant to the statute and regulation when it held that indexing the corrected rates through closed cost reports did not amount to a reopening. See Edgemont, PRRB Dec. No. 95-D34, A.R. Vol. 1 at 240-41. Rather, the Board concluded that, because indexing the modified numbers through closed reports was "the only means by which to correct" the reimbursement limit for subsequent years and because the reopening regulation did not prevent such adjustments, the modifications were permissible – and indeed necessary – to ensure accuracy in subsequent years. Id. at 241. The same principle applies here.

Finally, in determining the reasonableness of the Secretary's position here, the Court must consider that it has shifted from what she espoused in previous cases. Since she has failed to adequately explain the change, this, too, counsels in favor of finding her decision arbitrary. Regions presents the most glaring illustration of the Secretary's inconsistency on this issue. The Secretary there sought precisely what Plaintiffs want here – that is, a correction of a base-year figure in order to ensure accurate GME reimbursement levels for open years. See 522 U.S. at 455; Pl. Mot. at 1-2, 30. In addition, she emphasized there that the total reimbursement in the base year would not be altered, since the report for that year was no longer subject to reopening. Regions, 522 U.S. at 455-56. While the Secretary did not see any problem with changing a base-

15

year figure while leaving total reimbursement undisturbed in Regions, she argues here that a change to the base-year FTE cap would necessitate an adjustment in the total reimbursement in violation of the three-year limit on reopening. The Secretary thus accomplished in Regions what she contends it is unlawful for Plaintiffs to do here.

Likewise, in Regions, the Secretary recognized the absurdity of allowing a mistake in a base-year calculation to be perpetuated indefinitely due to the time limit on reopening. The Secretary stated in that case that "it is 'hard to believe that Congress intended that misclassified and nonallowable costs [would] continue to be recognized through the GME payment indefinitely." Id. at 458-59 (citing 54 Fed. Reg. 40301 (1989)). Yet, in this case, the Secretary maintains that it is perfectly reasonable to allow the error to affect reimbursement levels far into the future. The only real difference between the miscalculation in that case and the purported error here is that perpetuation of the mistake in Regions would have resulted in a financial loss to the agency, whereas in this case, the agency stands to gain. This seems to be the very definition of treating like situations differently. Since the Secretary has failed to provide sufficient reasons for her change of position, the Court finds that her decision in this case was arbitrary. See County of Los Angeles, 192 F.3d at 1022 ("'A long line of precedent has established that an agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently.'") (quoting Transactive Corp. v. United States, 91 F.3d 232, 237 (D.C. Cir. 1996)).

In sum, the Court finds that the Secretary's position on reopening is not in accordance with the law. While the Court is mindful of the deference that is due to the Secretary under the APA, Plaintiffs' position "is the only interpretation logically consistent with the regulatory

language." HealthEast, 124 F.3d at 418. Summary judgment, accordingly, is appropriately entered for Plaintiffs.

    B. Remedy

Plaintiffs request that the Court enforce their stipulation with the intermediary regarding the correct number of FTEs rather than remanding the matter to the agency. See Pl. Opp. & Mot. at 26-33; see also Joint Stipulation at 1-2 (Jan. 29, 2009) (A.R., Vol. 1 at 213-14). They point out that it took "considerable effort to come to an understanding regarding what the Hospitals' GME FTE caps would be in the event the Hospitals prevailed," and that failing to honor the agreement would not only be inefficient, but would also create disincentives for parties to cooperate in future PRRB proceedings. Id. at 27, 31-32. In addition, Plaintiffs emphasize that the PRRB, which ruled in their favor before being reversed by the CMS Administrator, honored the stipulation. Id. at 28 (citing PRRB Dec. at 9 (A.R., Vol. 1 at 69)), 30.

The Secretary contends, however, that remand is the only appropriate course of action here. See Def. Reply at 21-24. The Court agrees. In administrative review cases, the district court "does not perform its normal role but instead sits as an appellate tribunal." Palisades Gen'l Hosp. v. Leavitt, 426 F.3d 400, 403 (D.C. Cir. 2005) (internal quotation marks and citation omitted). As such, it has "no jurisdiction to order specific relief," but must instead remand to the agency. Id.; see also Fed. Power Comm'n v. Idaho Power Co., 344 U.S. 17, 20 (1952) ("[T]he function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the [agency] for reconsideration"); County of Los Angeles, 192 F.3d at 1011 ("'Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards.'") (quoting PPG Indus., Inc. v. United States, 52 F.3d 363, 365 (D.C. Cir. 1995)). In fact, the D.C.

Circuit has expressly rejected a Ninth Circuit case on which Plaintiffs rely for the proposition that a district court can decline to remand an administrative review case where there is an identifiable way to resolve the factual issue.  See County of Los Angeles, 192 F.3d at 1023 ("necessarily part[ing] ways" with the Ninth Circuit's decision in Alvarado Community Hospital v. Shalala, 155 F.3d 1115, 1125 (9th Cir. 1998)); Pl. Opp. & Reply at 28.  In light of established precedent, the Court believes remand is the proper course here.

## IV. Conclusion

The Court will issue a contemporaneous order that grants Plaintiffs' Motion for Summary Judgment, denies Defendant's Motion for Summary Judgment, and remands to HHS for proceedings consistent with this Opinion.